UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **THE PINES HORSE FARM & SANCTUARY, LLC,** and **PEARL AND BROS ENTERPRISES, LLC**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br>**TOWNEBANK,**<br>Defendant. | Case No. 2:24-cv-181<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs The Pines Horse Farm & Sanctuary, LLC and Pearl and Bros Enterprises, LLC ("Plaintiffs"), bring this Class Action Complaint against Defendant TowneBank ("Defendant"), and allege as follows:

## INTRODUCTION

1. This case concerns Defendant's unlawful business practice of assessing multiple $42 fees on an item – one of the highest per item fees in the country.[1]

2. This practice breaches promises made in Defendant's adhesion contract, which includes the Fee Schedule (**Exhibit A** hereto, the "Contract").

3. Plaintiffs and other customers of Defendant have been injured by Defendant's improper fee maximization practices. Plaintiffs, individually and on behalf of the class of

---

[1] "According to the Federal Deposit Insurance Corporation, the average overdraft fee is $35, but fees can range from $10 to $40, depending on the bank." Overdraft Fees vs. Nonsufficient Funds Fees: What's the Difference?, CNET, 6/6/2023, available at https://www.cnet.com/personal-finance/banking/advice/overdraft-fees-vs-nonsufficient-funds-fees-whats-the-difference/.

1

individuals preliminarily defined below, bring claims for Defendant's breach of contract, including the duty of good faith and fair dealing.

## PARTIES

4.     Plaintiff The Pines Horse Farm & Sanctuary, LLC is a Virginia limited liability company and citizen with its principal place of business in Williamsburg, VA, which is in this District. Plaintiff has maintained a checking account with Defendant at all times relevant hereto.

5.     Plaintiff Pearl and Bros Enterprises, LLC is a Virginia limited liability company and citizen with its principal place of business in Williamsburg, VA, which is in this District. Plaintiff has maintained a checking account with Defendant at all times relevant hereto.

6.     Defendant is a bank with nearly $17 billion in assets. It is a citizen of Virginia with its headquarters and principal place of business in Portsmouth, Virginia, which is in this District. Defendant is engaged in the business or providing retail banking services to consumers at its 51 locations in Virginia and North Carolina.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a State different from the Defendant. The number of members of the proposed Class in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

8.     This Court has personal jurisdiction over the Defendant because it resides in, regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District—where Defendant maintains its headquarters.

## BACKGROUND FACTS

10. In 2021, the largest financial institutions in America charged customers almost $11 billion in overdraft fees. Customers who carried an average balance of less than $350 paid 84% of these fees. *Why Poverty Persists in America* (The New York Times, Mar. 9, 2023), https://www.nytimes.com/2023/03/09/magazine/poverty-by-america-matthew-desmond.html.

11. Because of this, industry leaders like Bank of America, Capital One, Wells Fargo, Alliant, and Ally have made plans to end the assessment of Overdraft Fees ("OD Fees") or Non-Sufficient Funds Fees ("NSF Fees") entirely. *See* Hugh Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo Ends Bounced Check Fees*, CNN (Jan. 12, 2022), https://bit.ly/3iTAN9k.

12. Through the imposition of these fees, Defendant has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue.

I. **Plaintiffs Never Agreed to be Assessed Multiple Fees on an Item.**

13. Defendant unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF fees, or an NSF fee followed by an overdraft fee, on an item.

14. Unbeknownst to consumers, when Defendant reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds, Defendant chooses to treat it as a new and unique item that was subject to yet another fee.

15. The Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-I 1-700b, FDIC-I 1-704k, 2012 WL 7186313.

16. The FDIC also recently recommended that the multiple fee practice be halted entirely. *See* Barbarino, Al. "FDIC Warns Banks About Risks of Bounced Check Fees." Law360, Aug. 19, 2022, *available at* https://www.law360.com/articles/1522501/fdic-warns-banks-about-risks-tied-to-bounced-check-fees.

17. And, in a recent issue of Consumer Compliance Supervisory Highlights, the FDIC again addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. *See* FDIC Consumer Compliance Supervisory Highlights, Mar. 2022, available at https://www.fdic.gov/news/financial-institution-letters/2022/fil22014.html.

18. In the Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC stated that the "failure to disclose material information to customers about re-presentment practices and fees" may be deceptive. *Id*. at 8.

19. During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Terms were not clearly defined, and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive. This practice may also be unfair if there is the likelihood of substantial injury for customers, if the injury is not reasonably avoidable, and if there is no countervailing benefit to customers or competition. For example, there is risk of unfairness if multiple fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for consumers to bring their account to a positive balance. *Id*.

20. In its staff analysis of the issue, the American Bankers Association recommended that banks review their deposit account agreement to ensure it states clearly that a separate NSF fee will be assessed whenever the same item is resubmitted against insufficient funds. ABA also encouraged banks, if scrutinized by a regulator, to explain the significant logistical challenges with identifying items that have been resubmitted by the merchant for payment against insufficient funds. ABA is updating its staff analysis of this issue to reflect the Supervisory Highlights. *See* ABA Banking Journal, *FDIC provides guidance on multiple NSF fees for re-presented items*, April 1, 2022, *available at* https://bankingjournal.aba.com/2022/04/fdic-provides-guidance-on-multiple-nsf-fees-for-re-presented-items/.

*21.* As recently as October 2023, in its most recent issue of Supervisory Highlights Junk Fees Update Special Edition, the Consumer Financial Protection Bureau concluded that consumer injury from the assessment of NSF fees on re-presented items was "unfair," caused "substantial monetary injury to consumers, "and "not reasonably avoidable by consumers,

regardless of disclosures in account opening documents". *See* CFPB Supervisory Highlights June Fees Update Special Edition, Issue 31, Fall 2023, at 5, *available at* https://files.consumerfinance.gov/f/documents/cfpb_supervisory_highlights_junk_fees-update-special-ed_2023-09.pdf.

22. Defendant, however, engages in this abusive and deceptive practice in violation of its own contract and against the reasonable expectations of its customers.

23. The Contract allows Defendant to take certain steps when paying a check, in person withdrawal, ATM withdrawal, or other electronic payment item when the accountholder does not have sufficient funds to cover it. Specifically, Defendant may (a) pay the item and charge a $42 fee; or (b) reject the item and charge a $42 fee.

24. In contrast to the Contract, however, Defendant regularly assesses two or more $42 fees on an item.

**A. The Imposition of Multiple Fees on an Item Violates Defendant's Express Promises and Representations.**

25. The Contract is a standardized form contract for deposit accounts, the material terms of which are drafted by Defendant, amended by Defendant from time to time at its convenience and complete discretion, and imposed by Defendant on all of its deposit account customers.

26. The Contract provides the general terms of Plaintiffs' relationship with Defendant, and therein Defendant makes explicit promises and representations regarding how an item will be processed, and how fees may be assessed.

27. The Fee Schedule states:

| Overdrafts/Returns | |
|---|---|
| Overdraft Fee* | $42 per item (may be created by check, in-person withdrawal, automatic bill payments or other transactions made using your checking account number) |
| Business Returned Item Fee | $42 per item (may be created by check, in-person withdrawal, automatic bill payments or other transactions made using your checking account number) |

*On personal accounts, Overdraft Fees will be capped at 5 items per day and items paid which result in an overdrawn balance of $50 or less will not be assessed an Overdraft Fee.

Ex. A at 3-5.

28. Defendant therefore promises in its Fee Schedule to assess an "Overdraft Fee" (singular) of "$42 per item" or a "Business Returned Item Fee" (singular) of "$42 per item."

29. In breach of this promise, Defendant assesses multiple $42 Business Returned Item Fees per item or a $42 Business Returned Item Fee followed by a $42 Overdraft Fee per item. This means that accountholders may be assessed up to $126 in fees per item, as happened to Plaintiffs here.

30. The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiffs took no action to resubmit it.

31. There is no indication anywhere in the Contract that the same "item" is eligible to incur multiple fees.

32. Even if Defendant reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

33. Defendant and its customers never agreed that Defendant may assess multiple fees for a single check, in-person withdrawal, automatic bill payment, or other transaction item that was returned for insufficient funds and later reprocessed one or more times and returned again.

34. In sum, Defendant promised that one fee would be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the Contract when it charged more than one fee per item.

35. Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in the Contract.

36. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere do Defendant and its customers agree that Defendant will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.

37. Customers reasonably understand, based on the language of the Contract, that Defendant's reprocessing of checks, withdrawals, bill payments, and other transaction items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

38. Banks and credit unions like Defendant that employ this abusive practice require their accountholders to expressly agree to it.

39. Community Bank, NA, discloses its fee practice in its online banking agreement, in all capital letters, as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

40. The Contract provides no such authorization, and actually promises the opposite—Defendant may charge, at most, a fee on an item.

## B. Plaintiffs' Experience

- ### *Plaintiff The Pines Horse Farm & Sanctuary, LLC*

41. In support of Plaintiff The Pines Horse Farm & Sanctuary's claim, Plaintiff offers examples of fees that should not have been assessed against Plaintiff's checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

42. On or around June 6, 2023, Plaintiff attempted a payment to Uber Eats in the amount of $4.00.

43. Defendant rejected payment of that item and charged a $42 fee for doing so.

44. Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around June 13, 2023, Defendant rejected the same item again and charged Plaintiff *a second $42 fee* for doing so.

45. Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around June 20, 2023, Defendant rejected the same item again and charged Plaintiff a *third* $42 fee for doing so.

46. ***In sum, Defendant charged Plaintiff $126 in fees on an item.***

47. Defendant also assessed multiple fees on an item to Plaintiff The Pines Horse Farm & Sanctuary, LLC's checking account on or around May 22, 2023 and May 30, 2023; June 5, 2023 and June 12, 2023; June 7, 2023 and June 13, 2023; June 8, 2023 and June 16, 2023; July 14, 2023 and July 21, 2023; and July 18, 2023 and July 25, 2023.

48. <u>***Plaintiff Pearl and Bros Enterprises, LLC***</u>

49. In support of Plaintiff Pearl and Bros Enterprises, LLC's claim, Plaintiff offers examples of fees that should not have been assessed against Plaintiff's checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

50. On or around June 6, 2023, Plaintiff attempted a payment to Wayfair in the amount of $52.39.

51. Defendant rejected payment of that item and charged a $42 fee for doing so.

52. Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around June 9, 2023, Defendant rejected the same item again and charged Plaintiff ***a second $42 fee*** for doing so.

53. Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around June 15, 2023, Defendant rejected the same item again and charged Plaintiff a ***third*** $42 fee for doing so.

54. ***In sum, Defendant charged Plaintiff $126 in fees on an item.***

55. Defendant also assessed multiple fees on an item to Plaintiff Pearl and Bros Enterprises, LLC's checking account on or around May 18, 2023 and May 24, 2023; June 12, 2023, June 16, 2023, and June 23, 2023; and July 7, 2023, July 12, 2023, and July 17, 2023.

56. Plaintiffs understood the payment to be a single item as is laid out in the Contract, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

57. Defendant also understood the payment to be a single item because re-processed items are labelled as "RETRY PYMT" (i.e., as a retry of the consumer's original payment instruction and not a new, unique item subject to another fee).

58. The improper fees charged by Defendant were not errors, but rather intentional charges made by Defendant as part of its standard processing of items.

59. Plaintiffs therefore had no duty to report the fees as errors.

60. Moreover, any such reporting would have been futile as Defendant had made a decision to charge the fees in this specific manner to maximize profits at the expense of customers.

**II.  The Imposition of Multiple Fees on an Item Breaches Defendant's Duty of Good Faith and Fair Dealing.**

61. Parties to a contract are required not only to adhere to the express terms of the contract but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied duty to act in accordance with account holders' reasonable expectations and means that the bank or credit union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the bank or credit union has a duty to honor transaction requests in a way that is fair to its customers and is prohibited from exercising its discretion to pile on even greater penalties on its account holders.

62. Here—in the adhesion agreements Defendant foisted on Plaintiffs and its other customers—Defendant has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers'

11

accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees on an item.

63. Defendant exercised its discretion in its own favor—and to the prejudice of Plaintiffs and its other customers—when it defined key contractual terms such as "item" in a way that directly led to more fees that consumers could not reasonably anticipate. Further, Defendant abused the power it had over customers and their bank accounts and acted contrary to their reasonable expectations under the Contract. This is a breach of Defendant's implied covenant to engage in fair dealing and act in good faith.

64. In addition, Defendant exercises its discretion in its own favor and to the prejudice of Plaintiffs and its other customers when it reprocesses an item when it knows a customer's account lacks funds and then charges additional fees on an item. Further, Defendant abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Contract. This is a breach of Defendant's duty to engage in fair dealing and to act in good faith.

65. It was bad faith and totally outside of Plaintiff's reasonable expectations for Defendant to use its discretion to assess two or more fees on an item.

66. Defendant abuses its discretion and acts in bad faith by defining contract terms in an unreasonable way that violates common sense and by charging multiple fees on an item.

## CLASS ACTION ALLEGATIONS

67. Plaintiffs bring this action individually and as a class action on behalf of the following proposed class:

> All Defendant checking account holders who, during the applicable statute of limitations, were assessed multiple fees on an item by Defendant.

68. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

69. Plaintiffs reserve the right to modify or amend the definition of the proposed Class, if necessary, before this Court determines whether certification is appropriate.

70. The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant remedies the conduct complained of herein.

71. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identities of whom are within the exclusive knowledge of Defendant and can be readily ascertained only by resort to Defendant's records.

72. The claims of Plaintiffs are typical of the claims of the Class in that Plaintiffs, like all members of the Class, were charged improper fees as set forth herein. Plaintiffs, like all members of the Class, have been damaged by Defendant's misconduct. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Class and represents a common thread of unlawful and unauthorized conduct resulting in injury to all members of the Class. Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other members of the Class.

73. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

74. Among the questions of law and fact common to the Class include:

- Whether Defendant charged more than one fee on an item;
- Whether these practices breached the Contract and the duty of good faith and fair dealing;
- The proper method or methods by which to measure damages; and
- The declaratory and injunctive relief to which the Class is entitled.

75. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions, particularly on behalf of consumers and against financial institutions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

76. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Defendant's misconduct will proceed without remedy.

77. Even if class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows for the consideration of claims which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

78. Plaintiffs suffer a substantial risk of repeated injury in the future. Plaintiffs, like all Class members, are at risk of additional improper fees. Plaintiffs and the Class members are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its unfair and illegal actions.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract including Breach of the Covenant of Good Faith and Fair Dealing)**
**(On Behalf of Plaintiffs and the Class)**

79. Plaintiffs incorporate by reference the preceding paragraphs.

80. Plaintiffs and Defendant have contracted for banking services as embodied in Defendant's Contract. *See* Ex. A.

81. All of Defendant's account holders, including Plaintiffs and the members of the Class, are subject to the Contract.

82. All contracts entered by Plaintiffs and the Class are identical or substantively identical because Defendant's form contracts were used uniformly.

83. Defendant misconstrued in the Contract its true fee practices and breached the express terms of the Contract.

84. No contract provision authorizes Defendant to charge multiple fees on an item.

85. Defendant breached the terms of its Contract by charging multiple fees on an item.

86. Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

87. Virginia imposes a duty of good faith and fair dealing on contracts between banks and their customers because banks are inherently in a superior position to their checking account holders because, from a superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

88. Defendant abuses its discretion in its own favor—and to the prejudice of Plaintiffs and other customers by charging improper fees. This is an abuse of the power that Defendant has over Plaintiffs and their bank accounts, is contrary to Plaintiffs' reasonable expectations under the Contract, and breaches Defendant's implied covenant to engage in fair dealing and to act in good faith.

89. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

90. Defendant has breached the covenant of good faith and fair dealing in the contract through its policies and practices as alleged herein.

91. Defendant harms Plaintiffs and members of the Class by abusing its contractual discretion that no reasonable customer would anticipate.

92. Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Contract.

93. Plaintiffs and members of the Class have sustained damages because of Defendant's breach of the Contract.

94. Plaintiffs and members of the Class have sustained damages because of Defendant's breach of the covenant of good faith and fair dealing.

95. Plaintiffs and members of the Class are entitled to injunctive relief to prevent Defendant from continuing to engage in the foregoing conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs and member of the Class demand a jury trial on all claims so triable and judgment as follows:

a. Certification for this matter to proceed as a class action;

b. Designation of Plaintiffs as the Class Representative and designation of the undersigned as Class Counsel;

c. Declaring Defendant's fee policies and practices alleged in this Complaint to be wrongful and unconscionable in light of its contractual promises;

d. Enjoining Defendant from breaching its account documents and continuing to assess multiple fees on an item;

e. Restitution of all improper fees paid to Defendant by Plaintiffs and the Class because of the wrongs alleged herein in an amount to be determined at trial;

f. Actual damages in an amount according to proof;

g. Pre- and post-judgment interest at the maximum rate permitted by applicable law;

h. Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

i. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs, by counsel, demand trial by jury.

Dated: March 19, 2024

Respectfully submitted,

By: */s/ Devon J. Munro*
Devon J. Munro (VSB # 47833)
**MUNRO BYRD, P.C.**
120 Day Ave. SW, Suite 100
Roanoke, VA 24016
Telephone: (540) 283-9343

Fax: (540) 328-9290
dmunro@trialsva.com

David M. Berger *
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
dmb@classlawgroup.com

Shawn K. Judge *
Mark H. Troutman *
**GIBBS LAW GROUP LLP**
1554 Polaris Parkway, Suite 325
Columbus, Ohio 43240
Telephone: (510) 350-9700
Fax: (510) 350-9701
skj@classlawgroup.com
mht@classlawgroup.com

Lynn A. Toops *
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: 317-636-6481
Facsimile: 317-636-2593
ltoops@cohenandmalad.com

J. Gerard Stranch, IV *
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com

*Attorneys for Plaintiffs and the Putative Class*

18